UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOSHE LEDERFEIND and<br>GOLIATH LABORATORIES, LLC,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>BARTHOLOMEW PANESSA, NUTRALOID LABS INC, and ANTHONY J. LISANTI,<br><br><br>　　　　　　　　　　Defendants. | Civil Case No. 1:23-cv-1394 (GTS/CFH)<br><br>COMPLAINT |

Plaintiffs Moshe Lederfeind ("Lederfeind") and Goliath Laboratories, LLC ("Goliath") (hereinafter collectively "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Defendants Bartholomew Panessa ("Panessa"), Nutraloid Labs, Inc. ("Nutraloid") and Anthony J. Lisanti ("Lisanti") (hereinafter collectively "Defendants"), hereby allege as follows:

## INTRODUCTION

1. In this action, Defendant Panessa sold Plaintiff Lederfeind an undivided interest in his supplement business Goliath Laboratories along with its related intellectual property.

2. After the sale was completed, Lederfeind learned that he was induced to purchase Panessa's business based on documents Panessa knew were forged, which led Lederfeind to believe that Panessa's business was more valuable than it really was.

3. Making matters worse, once Lederfeind learned of Panessa's deceitful behavior, Panessa wrongfully seized control of the business and intellectual property he had sold to Lederfeind.

1

4. Lederfeind comes to this Court asking for relief from Panessa's unjust, oppressive and illegal actions.

5. As detailed herein, Panessa, his company Nutraloid, and his nephew Lisanti are liable for numerous tortious acts and violations of the law.

## THE PARTIES

6. Plaintiff Moshe Lederfeind is an individual residing in the state of New York. He is the owner and managing member of Goliath Laboratories, LLC.

7. Plaintiff Goliath Laboratories, LLC is a limited liability company organized in the State of New York.

8. Defendant Bartholemew Panessa is an individual residing in the state of New York. He is the owner of Nutraloid Labs, Inc..

9. Defendant Nutraloid Labs, Inc. is a domestic corporation organized in the State of New York.

10. Defendant Anthony Lisanti is an individual residing in the state of New York.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 as this matter arises under the Constitution, laws, or treaties of the United States.

12. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1367 as this matter involves claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is properly laid in this district as Plaintiffs and Defendants agreed to litigate disputes stemming from the Asset Purchase Agreement in this District.

14. This Court has personal jurisdiction over Defendants because Defendants directly, with their respective directors, officers, employees, representatives, and/or agents participated in the acts, practices or omissions giving rise to the claims described herein in this District.

## FACTS

15. Plaintiff Lederfeind first encountered Defendant Panessa in or about August 2019, when Lederfeind was looking to enter the vitamins and supplements business.

16. At that time, Panessa owned a supplement business by the name of Nutraloid Labs, Inc., d/b/a Goliath Labs.

17. In or around August 2019, Panessa advised Lederfeind that Goliath Labs sold various exercise accessories and weightlifting, athletic and bodybuilding supplements, as well as vitamins and nutrition blends and supplements and that its primary and best-selling product was its Goliath Labs 100% Whey Protein Powder (the "Powder"). For marketing purposes, it also sold the same product under a different label called Colossal Labs 100% Whey Protein Powder.

18. In or around August 2019, Panessa advised Lederfeind that he was interested in selling Nutraloid's assets and business.

19. At that time, Lederfeind was told that Nutraloid's primary product was its Goliath Labs 100% Whey Protein Powder. Panessa's whey protein supplier was a laboratory located in Florida ("the Laboratory").

20. At that time, Panessa informed Lederfeind of his long standing relationship with the Laboratory. Because of this relationship, Panessa told Lederfeind that he was able to secure a discount on the Powder, which he then sold under the Goliath Labs name.

21. Panessa further maintained that to continue receiving this significant discount, Lederfeind should not contact the Laboratory to inform them of the change in ownership.

Lederfeind complied and did not reach out to the Laboratory to tell them that he now owned Nutraloid and would be selling the Powder under Goliath Labs.

22.     During the time Lederfeind was evaluating whether to purchase Nutraloid, Panessa provided Lederfeind with Certificates of Analysis for various flavors of the Powder ("Certificates of Analysis").

23.     The Certificates of Analysis purported to demonstrate that the Powder sold by Nutraloid, under the brand name Goliath Labs, conformed to industry standards and contained approximately 25 grams of protein per 33.5 gram serving of the Powder.

24.     Based on the Certificates of Analysis received from Panessa, on March 19, 2020 Lederfeind entered into an Asset Purchase Agreement with Panessa's company Nutraloid, to purchase the Nutraloid business and assets for $1,095,000.00.  Plaintiff Lederfeind founded and organized Plaintiff Goliath for the purpose of this transaction and to operate the business going forward.

25.     In order to finance the purchase of Nutraloid, Defendants provided financing to Plaintiffs in the form of two notes.

26.     First, Defendants executed a promissory note in which Defendants agreed to pay Plaintiffs the sum of Three Hundred and Fifty Three Thousand, Six Hundred and Ninety One Dollars and Eighty Two Cents ($353,691.82) ("Note No. 1").  The purpose of Note No. 1 was to finance the purchase of Nutraloid's stock of Powder, vitamins and all inventory, separate and apart from financial obligations in the Asset Purchase Agreement.

27.     On July 31, 2020, Defendants executed a second promissory note in favor of Plaintiffs, for the sum of One Million and Ninety Five Dollars ($1,095,000.00) ("Note No. 2").

The purpose of Note No. 2 was to satisfy Plaintiff's obligations under the Asset Purchase Agreement.

28. Defendant Lisanti, Panessa's nephew, had worked for Nutraloid prior to the sale of the company. Following Lederfeind's purchase of the company, Lisanti offered to and did stay on and continue to work for Nutraloid.

29. During the COVID-19 pandemic, the vitamin and supplement industry was struck by a whey protein shortage. Because of this, Lederfeind began to seek out alternate suppliers of whey protein, besides the Laboratory.

30. During this search, Lederfeind learned that other suppliers of whey protein were charging more than double what he had been paying to the Laboratory, for what he believed was the exact same product.

31. This alerted Lederfeind to the fact that there may be a quality issue with the whey protein he was purchasing from the Laboratory.

32. In order to confirm his suspicions, Lederfeind had three flavors of the Powder, which he had purchased from the Laboratory, tested by Exact Scientific Services.

33. However, the reports from Exact Scientific Services indicated that much of the nutritional information in each flavor was significantly deficient and different than what Lederfeind was told prior to purchasing Nutraloid ("Reports"). Specifically, the Reports show that the grams of protein per 33.5 gram serving, which should have been approximately 25 grams, came back at 7- 8 grams per serving, depending on the flavor.

34. Upon this discovery, Lederfeind contacted Panessa to share with him the Results. In response, Panessa admitted that he was aware that the Powder Nutraloid had been selling for years contained less protein than listed on the product label.

35. Panessa also admitted to falsifying Certificates of Analysis provided prior to the execution of the Asset Purchase Agreement.

36. Thereafter, Plaintiffs and Defendants became embroiled in disputes in New York State Supreme Court whereby Defendants demanded that Plaintiffs be held liable for the full amounts of Note 1 and Note 2 due to non-payment.[1]

37. In July or early August, 2021, Panessa set into action a plan to take back the Nutraloid assets he sold to Lederfeind.

38. On or about August 3, 2021, Lisanti sent Panessa a list of passwords to access the websites where Plaintiff Goliath conducted its business.

39. Panessa then proceeded to change these passwords to deprive Lederfeind of access.

40. Since that time, Panessa has had exclusive control and use of Goliath's accounts including those accounts where Goliath sells products on Amazon, where Goliath conducted approximately 50% of its business, and on eBay.

41. On or about August 10, 2021, Lisanti and Panessa unlawfully entered the Goliath warehouse and stole business documents, customer lists and Goliath's product inventory.

42. Plaintiffs possess video evidence of Lisanti and Panessa's unlawful entry and will provide copies to the Court at its discretion.

43. From August 2021 until the present date, Panessa has used the internet accounts, business documents, customer lists and product inventory to take control of and operate the Goliath business.

---

[1] Ultimately, Judge James Gilpatric ruled in favor of Defendants and has Ordered Plaintiffs to pay the amounts owed to Defendants under Note 1 and Note 2. The amounts owed under these notes are not in dispute in this action. Moreover, Judge Gilpatric has made clear that contentions and causes of action herein were not addressed in the litigation concerning Note 1 and Note 2.

44. Panessa retains all of the money he makes from operating the Goliath business and none of these monies are paid to Plaintiffs.

45. Moreover, Panessa and Nutraloid hired counsel to assert that Nutraloid is the true owner of the intellectual property he supposedly sold to Plaintiffs.

46. Pursuant to the Asset Purchase Agreement, Plaintiffs purchased intellectual property rights concerning the proprietary blend "Ejaculoid."

47. Plaintiffs received a letter from attorney Jack Wilson dated December 7, 2022 claiming that Panessa and Nutraloid are the true owners of the "Ejaculoid" mark and advising that Panessa and Nutraloid have applied for trademark protection for that mark.

48. Defendants and or their counsel also sent a copy of Mr. Wilson's letter to The Vitamin Shoppe, where Plaintiffs sold the Ejaculoid product.

49. As a result, Plaintiffs were advised by Carlos Lopez of The Vitamin Shoppe that the company would no longer sell the Ejaculoid product, "given the ambiguity regarding ownership of the mark."

50. Panessa retains all of the money he makes from operating the Goliath business and none of these monies are paid to Plaintiffs.

51. Defendants have also filed at least three applications with the United States Patent and Trademark Office seeking to register the Ejaculoid mark. This includes Serial Numbers 97284099, 97809062 and 97800822.

52. Defendants have since been granted registration of the Ejaculoid mark at Registration Number 7022918.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE LANHAM ACT 15 U.S. CODE § 1125**
**(AS AGAINST PANESSA AND NUTRALOID)**

53. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

54. Pursuant to 15 U.S. Code § 1125 (the "Lanham Act"), (1)Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

55. Pursuant to the Asset Purchase Agreement, Defendants sold to Plaintiffs intellectual property including "the tradenames/company names Goliath Labs."

56. Pursuant to the Asset Purchase Agreement, Defendants sold to Plaintiffs intellectual property in the form of the marks and formulations for certain supplements, including but not limited to "Ejaculoid" and "Stimuloid."

57. Since in or about August 2021, Defendants Panessa and Nutraloid have violated the Lanham Act in that they have been selling products bearing the Goliath Labs tradename through various means, including but not limited to on amazon.com, Walmart.com and ebay.com.

58. Since in or about August 2021, Defendants Panessa and Nutraloid have violated the Lanham Act in that they have been selling products bearing the Ejaculoid and Stimuloid marks through various means, including but not limited to on amazon.com, Walmart.com and ebay.com.

59. Because Defendants are selling products bearing one or more marks which are actually owned by Plaintiffs, there is a strong likelihood that consumers are confused as to the true

affiliation, connection and association between Plaintiffs and Defendants and the true origin of the products being sold by Defendants.

60. Defendants Panessa and Nutraloid have retained all monies they have received from this violative conduct, at the expense of Plaintiffs.

61. Plaintiffs hereby sue under the Lanham Act for an award amounting to (a) Defendants' profits; (b) compensatory damages and (c) the costs of this action.

62. Plaintiffs assert that this case qualifies as "exceptional" and, hereby requests an award of attorney's fees.

## SECOND CAUSE OF ACTION
## LANHAM ACT 15 U.S. CODE § 1120
## (AS AGAINST PANESSA AND NUTRALOID)

63. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

64. 15 U.S. Code § 1120 provides that "[a]ny person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

65. Defendants have also filed at least three applications with the United States Patent and Trademark Office seeking to register the Ejaculoid mark. This includes Serial Numbers 97284099, 97809062 and 97800822.

66. Defendants have since been granted registration of the Ejaculoid mark at Registration Number 7022918.

67. Defendants procured Registration Number 7022918 by false and fraudulent statements insofar as Defendants are not the legal owner of the Ejaculoid mark.

9

68. As a result of Defendants' false and fraudulent statements in procuring Registration Number 7022918, along with their efforts to convince Plaintiffs' vendors that Defendants own the Ejaculoid mark, Plaintiffs have been damaged in the form of lost sales.

69. Plaintiffs hereby sue Defendants Panessa and Nutraloid for consequential damages stemming from their fraudulent statements used to procure Registration Number 7022918.

70. Because Plaintiffs are the true owners of the Ejaculoid mark and because Registration Number 7022918 was procured through fraud, Plaintiffs hereby request that this Court cancel Registration Number 7022918 pursuant to its powers under 15 U.S.C. 1119.

### THIRD CAUSE OF ACTION
### COMMON LAW TRADEMARK INFRINGEMENT
### (AS AGAINST PANESSA AND NUTRALOID)

71. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

72. Plaintiffs own valid and legally protectable marks in the form of those governed by the Asset Purchase Agreement, including but not limited to Goliath Labs, Ejaculoid and Nutraloid.

73. Since in or about August 2021, Defendants Panessa and Nutraloid have engaged in common law trademark infringement in that they have been selling products bearing the Goliath Labs tradename through various means, including but not limited to on amazon.com, Walmart.com and ebay.com.

74. Because Defendants are selling products bearing one or more marks which are actually owned by Plaintiffs, there is a strong likelihood that consumers are confused as to the true affiliation, connection and association between Plaintiffs and Defendants and the true origin of the products being sold by Defendants.

75. Defendants Panessa and Nutraloid have retained all monies they have received from this violative conduct, at the expense of Plaintiffs.

76. Plaintiffs hereby bring suit under the common law for injunctive relief, compensatory damages, statutory damages and attorney's fees.

## FOURTH CAUSE OF ACTION
## VIOLATION OF N.Y. GBL § 349
## (AS AGAINST PANESSA AND NUTRALOID)

77. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

78. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

79. Defendants have engaged in deceptive acts and practices barred by GBL § 349 in that they have been selling products using names and marks which belong to Plaintiffs.

80. Because Defendants are selling products bearing one or more marks which are actually owned by Plaintiffs, there is a strong likelihood that consumers are confused as to the true affiliation, connection and association between Plaintiffs and Defendants and the true origin of the products being sold by Defendants.

81. These acts are plainly directed at consumers.

82. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## VIOLATION OF N.Y. GBL § 350
## (AS AGAINST PANESSA AND NUTRALOID)

83. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

84. N.Y. Gen. Bus. Law § 350 ("GBL § 350") provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

85. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

86. Defendants have violated GBL § 350 in that they labeled their products in a misleading fashion in that they have been selling products using names and marks which belong to Plaintiffs.

87. Because Defendants are selling products bearing one or more marks which are actually owned by Plaintiffs, there is a strong likelihood that consumers are confused as to the true affiliation, connection and association between Plaintiffs and Defendants and the true origin of the products being sold by Defendants.

88. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble

and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**COMMON LAW UNFAIR COMPETITION**
**(AS AGAINST PANESSA AND NUTRALOID)**

89. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

90. Plaintiffs own valid and legally protectable marks in the form of those governed by the Asset Purchase Agreement, including but not limited to Goliath Labs, Ejaculoid and Nutraloid.

91. Since in or about August 2021, Defendants Panessa and Nutraloid have engaged in common law unfair competition in that they have been intentionally selling products bearing the Goliath Labs tradename through various means, including but not limited to on amazon.com, Walmart.com and ebay.com.

92. Because Defendants are intentionally selling products bearing one or more marks which are actually owned by Plaintiffs, there is a strong likelihood that consumers are confused as to the true affiliation, connection and association between Plaintiffs and Defendants and the true origin of the products being sold by Defendants.

93. Defendants are aware that they do not own Plaintiffs' marks and, thus, have proceeded intentionally and in bad faith.

94. Defendants Panessa and Nutraloid have retained all monies they have received from this violative conduct, at the expense of Plaintiffs.

95. Plaintiffs hereby bring suit under the common law for injunctive relief, compensatory damages, statutory damages and attorney's fees.

**SEVENTH CAUSE OF ACTION**
**FRAUDULENT INDUCEMENT**
**(AS AGAINST PANESSA AND NUTRALOID)**

96. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

97. Prior to entering into the Asset Purchase Agreement, Plaintiffs were shown Certificates of Analysis evidencing that the Powder contained an industry standard amount of approximately 25 grams of protein per 33.5 gram serving of the Powder.

98. Plaintiffs relied upon the Certificates of Analysis and the pricing for the Powder when they decided to proceed with the execution of the Asset Purchase Agreement.

99. The information in the Certificates of Analysis was false as the Certificates of Analysis were forged to show a higher amount of protein per gram than actually existed in the Powder.

100. Indeed, the Reports commissioned by Plaintiffs after the execution of the Asset Purchase Agreement showed that the grams of protein per 33.5 gram serving, which should have been approximately 25 grams, came back at 7- 8 grams per serving, depending on the flavor.

101. Had Plaintiffs known that the Powder contained only 7-8 grams of protein per serving, Plaintiffs would have learned that Defendants were selling fraudulently marketed Powder and, as such, Defendants profits were only sustainable if Plaintiffs intended on violating the law after completing the purchase of Goliath Labs.

102. Accordingly, had Plaintiffs known that the Powder contained only 7-8 grams of protein per serving, Plaintiffs would not have executed the Asset Purchase Agreement.

103. Plaintiffs were therefore fraudulently induced into executing the Asset Purchase Agreement.

104. As a result, Plaintiffs purchased a business which is inherently less valuable because Plaintiffs must now pay far more for the Powder in order to obtain a product which contains the appropriate amount of protein.

105. Plaintiffs hereby sue Defendants to recover the difference in value between what Plaintiffs paid for the Goliath Labs business and what the Goliath Labs business was actually worth, had Defendants been truthful about the price and nature of the protein Powder.

**EIGHTH CAUSE OF ACTION**
**BREACH OF CONTRACT – NON-COMPETE**
**(AS AGAINST PANESSA AND NUTRALOID)**

106. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

107. As part of the Asset Purchase Agreement Defendants agreed to not compete with Plaintiffs.

108. Since in or about August 2021, Defendants Panessa and Nutraloid have violated this agreement in that they have been selling products bearing the Goliath Labs tradename through various means, including but not limited to on amazon.com, Walmart.com and ebay.com.

109. Because Defendants are in direct competition with Plaintiffs in violation of the Asset Purchase Agreement, Plaintiffs seek an injunction forbidding further competition and an award of damages recouping all profits earned by Defendants as a result of this violative behavior.

**NINTH CAUSE OF ACTION**
**CONVERSION**
**(AS AGAINST ALL DEFENDANTS)**

110. Plaintiffs repeat and reallege all preceding allegations in this Complaint as if restated fully herein.

111. On or about August 10, 2021, Lisanti and Panessa unlawfully entered the Goliath warehouse and stole business documents, customer lists and Goliath's product inventory.

112. Plaintiffs possess video evidence of Lisanti and Panessa's unlawful entry and will provide copies to the Court at its discretion.

113. Defendants must be held liable for conversion of Plaintiffs' property.

114. Defendant asks this Court for an injunction requiring the return of Plaintiffs' property and an award of compensatory damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor as and against Defendants, as follows:

A. Awarding compensatory, consequential and treble monetary damages;

B. Awarding attorney's fees;

C. Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

D. Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

E. Awarding punitive damages;

F. Cancelling Registration Number 7022918 pursuant to its powers under 15 U.S.C. 1119;

G. Enjoining Defendants from further violations of the law;

H. Ordering Defendants to return Plaintiffs' converted property;

I. Awarding pre-judgment interest at the maximum statutory rate; and

J. Granting such other and further relief as the Court may deem just and proper.

Dated: November 3, 2023

                                                            Respectfully submitted,

                                                            THE SULTZER LAW GROUP, P.C.

                                                            By: *s/Jason P. Sultzer*
                                                                  Jason P. Sultzer, Esq.
                                                                  Philip J. Furia, Esq.*
                                                                  85 Civic Center Plaza, Suite 200
                                                                  Poughkeepsie, NY 12601
                                                                  Tel: 845-483-7100
                                                                  Fax: 888-749-7747
                                                                 sultzerj@thesultzerlawgroup.com
                                                                  furiap@thesultzerlawgroup.com

                                                                **Admission Forthcoming*